UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

Maynard Etherton,                                                Civ. No. 5:10-cv-35

                    Petitioner,

v.                                                        **MEMORANDUM AND ORDER**

Secretary, Department of Children &
Families, Secretary, Department of
Corrections, Florida Attorney General,

                    Respondents.

_____

        Maynard Etherton, Petitioner herein, a detainee in the Florida Civil Commitment

Center proceeding pro se, brings this amended petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 (Dkt. 13). The Court has considered the amended petition,

Respondent's response (Dkt. 21), and Petitioner's reply (Dkt. 24). Upon review, the Court

determines that the amended petition must be denied because Petitioner's grounds do not

provide a basis for federal habeas corpus relief.

**BACKGROUND**

        Petitioner pleaded nolo contendere to sexual battery on a child in June 1990.  On

March 21, 1994 Petitioner was on probation for the first conviction and pleaded nolo

contendere to two counts of lewd and lascivious assault on a child and one count of lewd

and lascivious act in the presence of a child.  Petitioner received concurrent ten-year

sentences for each of the three new counts.  At the same time, Petitioner's probation was

revoked, and he was sentenced to serve twenty-five years for the initial sexual battery conviction.

On January 1, 1999, the Jimmy Ryce Involuntary Civil Commitment for Sexually Violent Predators Treatment and Care Act (hereinafter "Jimmy Ryce Act") went into effect in Florida, and created a system for the involuntary evaluation and confinement of sexually violent offenders, and for treatment of these individuals. Fla. Stat. Ch. 394.910, et seq. The Jimmy Ryce Act requires that a team of mental health professionals evaluate a person who had been convicted of a sexually violent offense prior to his or her anticipated release to determine both if he or she meets the definition of a sexually violent predator under the Jimmy Ryce Act, and if he or she suffers from a mental disorder that makes it likely the person will commit another sexually violent offense if not confined. Fla. Stat. § 394.913(3)(b). As part of the evaluation, the mental health professionals must provide the person convicted of a sexually violent offense an opportunity to be interviewed personally. Id. § 394.913(3)(c). However, the mental health professionals may proceed in their evaluation without an interview if the offer is refused. Id.

The mental health professionals provide their assessment to the state attorney. Id. § 394.913(3)(e). The state attorney may then file a petition with the circuit court asserting the person is a sexually violent predator. Id. § 394.914. If the circuit court finds probable cause that the person is a sexually violent predator, then the judge may commit the person to temporary civil confinement. Id. § 394.915. The court then conducts a trial to determine if the person is a predator. Id. § 394.916. If the court finds

2

the person is a predator and is subject to civil commitment, the person can petition the court once a year to be released due to a change in status. Id. § 394.918.

On November 22, 2002, prior to Petitioner's anticipated release from prison, a multi-disciplinary team of mental health professionals rendered a report pursuant to the Jimmy Ryce Act in which it concluded that Petitioner was a sexually violent predator within the meaning of Fla. Stat. § 394.910, and met the criteria for involuntary civil commitment. On August 14, 2003, the Office of the State Attorney for the Fifth Judicial Circuit filed a petition for civil commitment and requested a probable cause determination from the Lake County Circuit Court. On August 26, 2003, the Circuit Court found probable cause that Petitioner was a sexually violent predator, ordered Petitioner held by the Department of Children and Family Services ("DCF") pending further proceedings, and appointed the Office of the Public Defender to represent Petitioner.

Petitioner's father initially hired private counsel to represent Petitioner. Eventually, after his private counsel requested and received numerous continuances to secure a psychologist as an expert witness, Petitioner fired his private counsel and was represented at trial by a public defender. On June 6, 2006, a jury trial commenced on the petition for civil commitment. The following day, the jury unanimously found Petitioner to be a sexually violent predator. The Circuit Court adjudged Petitioner a sexually violent predator and committed him to the custody of the DCF "until such time as a court of competent jurisdiction determines that he is safe to be at large, and that, if released, that [Petitioner] is not likely to engage in acts of sexual violence." (Resp't Ex. A, Vol.

3

VI at 328.)    On October 30, 2007, the Circuit Court held that Petitioner presented no evidence to demonstrate a change in his condition and chose not to release him from his civil commitment.

In his appeal from the civil commitment, Petitioner argued only that the State presented improper expert witness testimony and that evidence of collateral crimes was improperly admitted.  The Florida Fifth District Court of Appeal affirmed Petitioner's commitment.  Eatherton v. State, 23 So. 3d 731 (Fla. Dist. Ct. App. 2009) (per curiam). In November 2009, Petitioner filed a Petition or Writ of Habeas Corpus in the Florida Second District Court of Appeal in which he requested immediate release from involuntary civil commitment.  On December 15, 2009, the Florida Second District Court of Appeal denied the Petition for Writ of Habeas Corpus.  Eatherton v. State, 23 So. 3d 1189 (Fla. Dist. Ct. App. 2009) (per curiam).

Petitioner commenced the instant federal habeas proceedings on January 22, 2010. (Dkt. 1.)  He filed an amended petition on February 16, 2010, which is the basis for this proceeding.  (Dkt. 13.)  The amended petition raised seven grounds for which Petitioner believes he is entitled to relief.  Petitioner alleges that 1) he was incorrectly designated a sexual predator by the Florida Department of Corrections (DOC) and that the DOC should not have notified the DCF about his impending release from custody; 2) the timing of the commencement of his involuntary commitment proceedings violated statutory guidelines; 3) he was denied due process when he did not receive counsel during his interviews with the two mental health professionals who assessed him; 4) he received ineffective assistance of counsel during the civil commitment proceedings; 5)

his involuntary commitment was time-barred because the Jimmy Ryce Act was passed after he was criminally sentenced; 6) his involuntary commitment was a breach of contract because the State failed to release him according to the terms of his initial plea agreement; and 7) the Jimmy Ryce Act is unconstitutional because it forced the State to breach its plea agreement by not releasing him at the end of his sentence.

In this case, Respondent argues that Petitioner failed to exhaust his claims relating to grounds 1, 2, and 3. Petitioner disagrees and contends that the claims were exhausted when the Florida Second District Court of Appeal denied his petition for state habeas corpus relief. The Government asks that the Petition be dismissed with prejudice. Petitioner asks that his designation as a sexual predator be vacated and expunged. Petitioner further requests that his four convictions relating to sexual offenses all be vacated because the State allegedly failed to comply with the plea agreements by not releasing Petitioner at the end of his sentences.

**DISCUSSION**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") strictly limits a federal court's power to review habeas petitions brought by people held in custody pursuant to a state court order. "[F]ederal habeas corpus review may be available to challenge the legality of a state court order of civil commitment . . . ." Duncan v. Walker, 533 U.S. 167, 176 (2001). The AEDPA restricts the Court's review to state-court adjudications of the direct appeal or habeas petition that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The factual findings of a state court are presumed to be correct, and

may be rebutted only through clear and convincing evidence presented by a petitioner.

Id. § 2254(e)(1).

A habeas petitioner must exhaust his available state court remedies prior to raising

them in a federal habeas petition.  Id. § 2254(b)(1)(A).  A petitioner may only bring

federal habeas claims after presenting the same claim to state courts.  McNair v.

Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (citing Picard v. Connor, 404 U.S. 270,

275 (1971)).  If claims brought in state court were not raised in terms of federal law, then

the claim is not exhausted.  Gray v. Netherland, 518 U.S. 152, 162-63 (1996); Jimenez v.

Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007).  "In requiring exhaustion of a

federal claim in state court, Congress surely meant that exhaustion be serious and

meaningful."  Keeney v. Tamayo-Reyes, 504 U.S. 1, 10 (1992).

## A.      Grounds 1, 2, and 3

Petitioner brings three claims in which he argues the State violated the Jimmy

Ryce Act throughout his commitment proceedings.  While Petitioner was still serving his

sentence for lewd and lascivious acts, he was evaluated by two mental health

professionals to determine whether he suffered from a mental disorder that would make it

more likely he would commit another sexually violent offense if released.  Petitioner

argues that the State violated his due process by not providing him counsel during these

two assessments.  After receiving the assessments from the two doctors, the State filed a

petition to civilly commit Petitioner.  Petitioner argues that the State improperly initiated

the commitment proceedings without complying with the time restrictions imposed in the

Jimmy Ryce Act.  As a result of that petition, a jury trial was held in which Petitioner was

represented by counsel.  The jury ultimately found Petitioner to be a sexually violent

predator.  Petitioner argues that the DOC improperly designated him a sexual predator.

None of Petitioner's three claims related to the Jimmy Ryce Act are exhausted.  A

petitioner does not exhaust his claims in a state court when arguing a state law claim

using state law standards.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is not the

province of a federal habeas court to reexamine state-court determinations"); McNair v.

Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  "[T]he exhaustion doctrine is designed

to give the state courts a full and fair opportunity to resolve federal constitutional claims

before those claims are presented to the federal courts . . . ."  O'Sullivan v. Boerckel, 526

U.S. 838, 845 (1999).  Thus, habeas petitioners "must give the state courts one full

opportunity to resolve any constitutional issues . . . ."  Id.  Petitioner did not raise any

federal claims in front of the state courts at any point in the appellate process.  Therefore,

all three of his claims based on the State's application of the Jimmy Ryce Act in his case

are not exhausted.

Additionally, even if the claims were exhausted, Petitioner is still not entitled to

federal habeas relief because the State's denial on the merits was reasonable.  Wright v.

Sec'y for Dep't of Corr., 278 F.3d 1245, 1253 (11th Cir. 2002).  First, the DOC did not

designate Petitioner as a sexually violent predator in violation of the Jimmy Ryce Act.  In

fact, the DOC never designated Petitioner as such.  Petitioner was designated as a

sexually violent predator only after a jury trial.  As the circuit judge wrote, "The jury having found [Petitioner] is a sexually violent predator[,] [Petitioner] hereby is declared a Sexually Violent Predator."  (Resp't Ex. A, Vol. II at 219.)    Thus, Petitioner's claim on this ground fails even if it was exhausted.

Petitioner also argues that the State improperly initiated commitment proceedings within 545 days of the end of his sentence.  The State initiated the commencement proceedings approximately thirty days prior to Petitioner's anticipated release date.  The only portion of the Jimmy Ryce Act that includes a 545-day window simply explains that the agency with jurisdiction over a person who has been convicted of a sexually violent offense must "give written notice to the multidisciplinary team, and a copy to the state attorney of the circuit where that person was last convicted of a sexually violent offense" at least 545 days prior to the person's anticipated release date.  Fla. Stat. § 394.913(1)(a).  The Jimmy Ryce Act includes no timeframe in which commitment proceedings must be initiated.  Even if the State waited until the last possible moment, "the agency with jurisdiction shall upon immediate release from total confinement transfer [a person convicted of a sexually violent offense] to the custody of the Department of Children and Family Services to be held in an appropriate secure facility."  Id. § 394.9135(1).

Furthermore, section 394.9135(4) explains:

> The provisions of this section are not jurisdictional, and failure to comply with the time limitations, which results in the release of a person who has been convicted of a sexually violent offense, is not dispositive of the case and does not prevent the state attorney from proceeding against a person otherwise subject to the provisions of this part.

8

Id.  In fact, the legislature was careful in drafting the Jimmy Ryce Act to avoid creating a

rigid process for commitment proceedings to follow.  Instead, the Jimmy Ryce Act states,

"Following receipt of the written assessment and recommendation from the

multidisciplinary team, the state attorney . . . may file a petition with the circuit court

alleging that the person is a sexually violent predator and stating facts sufficient to

support such allegation."  Id. § 394.914.  It is apparent that the State may start civil

commitment proceedings at any time.  Thus, Petitioner's claim on this ground fails.

    Finally, Petitioner argues that he should have been appointed counsel to

accompany him to his interviews with the two mental health professionals.  The State

offered Petitioner the right to meet with the two mental health professionals as part of

their research in determining whether he met the criteria of a sexually violent predator.

Petitioner could have declined to be interviewed.  Id. § 394.913(3)(c).  The two mental

health professionals would have continued to make their evaluation regardless of whether

Petitioner met with them for an interview.  Id.  However, Petitioner participated in the

interviews and "expressed his hopes that by participating . . . something could come of

the motions he had filed."  (Resp't Ex. A, Vol. I at 71.)  At the commencement of the

interviews, Petitioner signed his informed consent to participate.  The State's failure to

provide counsel for a person participating in an evaluation prior to a possible civil

commitment proceeding is neither contrary to, nor an unreasonable application of, clearly

established federal law.  In short, Petitioner's claim on this ground fails.

**B.     Ground 4**

Petitioner contends that the trial court erred in denying his claim that his counsel was ineffective.  Petitioner can succeed on this claim only if he can show that the court's decision was based on an unreasonable determination of the facts.  Id. § 2254(d)(2).  Thus, Petitioner must establish both that his counsel was ineffective and that it was unreasonable for the trial court to conclude otherwise.

Petitioner must meet two criteria in order to succeed in challenging his commitment based on ineffective assistance of counsel.  First, Petitioner must establish that his counsel's performance "failed to meet the standard of reasonableness under prevailing professional norms."  Newland v. Hall, 527 F.3d 1162, 1184 (11th Cir. 2008) (citing Strickland v. Washington, 466 U.S. 668, 688 (1984) (internal quotations omitted)).  Second, Petitioner bears the burden to prove that but for his counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different.  Morris v. State, 931 So. 2d 821, 828 (Fla. 2006) (citing Strickland, 466 U.S. at 694).

Petitioner seeks relief because his trial counsel was limited in her ability to provide a viable defense.  Specifically, Petitioner argues that his counsel was ineffective because she was precluded from raising any counterclaims against the State.  (Dkt. 24.) The United States Supreme Court has recognized that indigent prisoners have a right to counsel when the State attempts to treat them as mentally ill.  Vitek v. Jones, 445 U.S. 480, 497-98 (1980).  Petitioner initially hired private counsel, but ultimately was represented by a public defender during his commitment trial.  See Fla. Stat. § 394.916(3)

10

(explaining that the court must appoint a public defender or conflict counsel if the person against whom the petition has been filed is indigent).   Petitioner received appointed counsel, and nothing in the record indicates that she performed unreasonably under the norms of professional conduct.   Further, no precedent exists to support Petitioner's argument that his appointed counsel should have been granted the right to do more than provide for his defense.  For that reason, Petitioner's claim on this ground fails.

## C.      Ground 5

Petitioner next contends that his commitment violates the Ex Post Facto Clause because he pleaded nolo contendere four years prior to the passage of the Jimmy Ryce Act.  The Ex Post Facto Clause "has been interpreted to pertain exclusively to penal statutes."   Kansas v. Hendricks, 521 U.S. 346, 370 (1997).  If a new law is aimed a punishing criminal behavior, the clause prohibits applying any new punitive measure to a crime previously committed.  Id. (citing California Dep't of Corr. v. Morales, 514 U.S. 499, 505 (1995)).   The Jimmy Ryce Act is not a punitive law aimed at punishing criminals; instead it is a civil proceeding.  See id. at 361-69 (explaining that a similar Kansas law is not punitive because the purpose is to hold a person until he is no longer a threat to the public rather than to punish him for his previous crimes); see also Westerheide v. State, 831 So. 2d 93, 100 (Fla. 2002) (stating that because a person is not committed under the Jimmy Ryce Act unless having a current "mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment," the law is clearly not punitive).  Because Petitioner was committed according to a civil action and

the State was not seeking to further punish him for his previous conviction, Petitioner's claim on this ground fails.

**D.      Ground 6**

Petitioner argues that his civil commitment was a breach of his criminal plea agreement with the State and should be treated as a breach of contract.  However, the Florida Supreme Court has held that any agreement entered into by the State in a criminal case has no bearing on a subsequent, involuntary civil commitment.  Harris v. State, 881 So. 2d 1079, 1083 (Fla. 2004) (citing Murray v. Regier, 872 So. 2d 217, 224 (Fla. 2002)). This determination is neither contrary to, nor an unreasonable application of, any United States Supreme Court precedent.  Therefore, Petitioner's claim on this ground fails.

**E.      Ground 7**

Petitioner finally contends that the Florida legislature violated the Contract Clause when it passed the Jimmy Ryce Act.  The United States Constitution prohibits any state from "impairing the [o]bligation of [c]ontracts."  Art. I, § 10, cl. 1.  As discussed above, the civil commitment proceedings initiated against Petitioner had no relation to his plea agreement.  Thus, Florida did not violate any of the terms of its plea agreement with Petitioner when it passed the Jimmy Ryce Act, and Petitioner's claim on this ground fails.

**CONCLUSION**

For the foregoing reasons, the Court determines that the Petition for a Writ of Habeas Corpus must be denied.  Accordingly, **IT IS HEREBY ORDERED that**:

1. The Amended Petition for Writ of Habeas Corpus (Doc. No. 13) is **DENIED**;

2. This action is **DISMISSED WITH PREJUDICE**; and

3. Because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834 (1998).

**The Clerk shall enter judgment accordingly, terminate all remaining deadlines as moot, and close the file.**

Dated: October 6, 2011

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge